**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   BRYAN YOUNG,

                                        Chapter 7
                                        Case No. 08-32333 (RTL)

        Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

Roberta A. DeAngelis,                      Adversary Proceeding
  United States Trustee,

               Plaintiff,                       Case No. 09-1774(RTL)

       v.

Bryan Young,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES:**

Roberta A. DeAngelis, U.S. Trustee
Michael A. Artis, Esq.
Attorney for Plaintiff

Straffi & Straffi, Esqs.
Daniel E. Straffi, Jr., Esq.
Attorney for Debtor/Defendant

**RAYMOND T. LYONS, U.S.B.J.**

### INTRODUCTION

United States Trustee, Roberta A. DeAngelis, Plaintiff, moves for summary judgment on her objection to discharge for Bryan Young, Debtor/Defendant, under 11 U.S.C. § 727. Because Mr. Young failed to satisfactorily explain the loss or deficiency of certain high-value consumer

goods and failed to keep or preserve recorded information from which his financial condition could be ascertained, he is denied a discharge.

I. JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J) (objection to discharge).

II. PROCEDURAL HISTORY

The U.S. Trustee filed this adversary case, seeking denial of discharge under 11 U.S.C. § 727 for the following reasons:

1) False oaths in violation of § 727(a)(4)(A),

2) Concealment of assets in violation of § 727(a)(2)(A),

3) Failure to explain a loss in assets in violation of § 727(a)(5), and

4) Failure to keep or preserve records in violation of § 727(a)(3).

Presently before the court is U.S. Trustee's Motion for Summary Judgment on all four counts.

Mr. Young filed a brief opposing summary judgment on all counts, alleging genuine issues of material fact. Mr. Young did not offer any additional evidence in conjunction with this brief. He claims to have provided "numerous documents to the Trustee substantiating his

business affairs including but not limited to bank statements dating back to 2004, tax returns, stock investment statements, ebay sales, paypal ledgers, gambling statements and credit card statements." However, Mr. Young has provided none of these materials to the Court, either in conjunction with his opposition or otherwise. Thus, the Court must base its decision on a record composed of Mr. Young's initial and amended schedules, as well as the exhibits to U.S. Trustee's motion, which include deposition testimony and interrogatory replies.

At oral argument, U.S. Trustee argued solely on the third count, relating to failure to explain a loss of assets. She asked to withdraw her motion for summary judgment on the other counts. However, this Court elected to preserve the fourth count, relating to failure to keep or preserve records. The parties presented oral argument on both the third and fourth counts.

III.    FACTS

Bryan Young filed this Chapter 7 petition on November 12, 2008. His only substantial asset at that time was real estate in Toms River, New Jersey, in which he held minimal equity after deducting the value of a mortgage.

Aside from this mortgage, Mr. Young's debts are all unsecured debts that, as scheduled in his original petition, total almost $1 million dollars. Mr. Young now argues that some of these debts are duplicative, but still admits that the total of these debts is well over $800,000.

These unsecured debts are comprised primarily of credit charge accounts and gambling markers. Of the charge account debt, approximately half is related to Mr. Young's business venture, AAA Interlocking Pavers, which sells and installs pavers on driveways, walkways, and patios. The remainder is consumer debt.

3

Mr. Young testified that in his best business years, 2000-2001, he drew an annual salary of approximately $150,000 from his business. Since then, business has not been as good. Mr. Young started incurring debt on his charge cards in 2003 and 2004. Around that time, he also refinanced his home to obtain a home-equity line of credit in the amount of approximately $200,000. Starting around 2005, and accelerating in 2008, his business began to decline markedly. At that time, he began supporting himself and his business by drawing on his home-equity line of credit and, once the home equity was exhausted in mid-2008, also on his credit cards. For this reason, and because Mr. Young primarily used one bank account for both business and personal purposes, his personal finances are difficult to separate from his business's finances.

Mr. Young's financial troubles were likely exacerbated by his attempts to gamble his way out of financial distress. During this period, he played at casinos in Atlantic City, Las Vegas, and elsewhere. In the summer immediately prior to filing this petition, he took a one-and-a-half month trip to Las Vegas, during which he lost at least $200,000, according to his testimony.

As his finances deteriorated, Mr. Young employed another strategy to keep up with his mounting personal and business bills – he began buying consumer goods on credit and reselling them for cash. Mr. Young has no records of these transactions, but he admits to buying and reselling electronics, furniture, and other high value items. Mr. Young has testified that he does not know how much money he earned from such transactions. At deposition, when asked about how much he earned from such transactions in 2008, he stated: "I mean I would think it's over 100 [thousand dollars], but I don't know if it is. . . . You know, it could be over $200,000. I

4

could be off by 100 percent. . . . I don't know exactly." He admits to having no records or receipts documenting these transactions.

Mr. Young's poor record keeping extends beyond these cash resale transactions. He has failed to provide tax returns for 2005, 2006, and 2007, and cannot remember who prepared them for him. On the one return he did provide, for 2008, Mr. Young explained away discrepancies identified by U.S. Trustee by stating that he "screwed up." When asked if his business inventory at the end of 2008 was $50,000, as reflected on Schedule C of his tax return, Mr. Young testified, "I think it had more like 80,000." As to his gambling wins and losses, Mr. Young has provided few details beyond the statement that his losses were "298,000 to 500,000 or more [dollars]," found on his Amended Statement of Financial Affairs ("SOFA"), filed November 18, 2009. Mr. Young has not corroborated these numbers with casino statements, which presumably can be obtained for a registered, card-carrying casino patron such as Mr. Young.

Indeed, Mr. Young's original and amended SOFA's are vague, incomplete, and inconsistent in their disclosure of his gambling and cash resale transactions. For example, he indicated on his original SOFA that he had no non-business or non-employment income in the 2 years prior to his filing. On his amended, SOFA, however, he listed $0 of income from "Ebay sales," "Trade of stock," and "Gambling." Yet when he listed his business income on the amended SOFA (at substantial amounts for 2006-2008), he listed these same activities as part of his business. Also, in the section regarding payments to creditors in the 90 days prior to filing, Mr. Young checked the "None" box on his initial SOFA, then listed a "Possible Gambling Marker" on his amended SOFA. However, he marked the creditor's name and address as "Unknown" and listed $0 for both the amount paid and the amount still owing.

5

As to Mr. Young's pattern of reselling consumer goods for cash, U.S. Trustee has identified several specific items purchased and resold by Mr. Young, namely a boat, a watch, a collectible guitar, and a bedroom furniture set. These transactions were not listed on Mr. Young's intial SOFA, but they were listed, in non-specific terms as to the boat, watch, and guitar, on his amended SOFA, in the section regarding transfers outside the ordinary course of business. Mr. Young also made a blanket disclosure regarding "numerous items" purchased on eBay and then resold, though he claimed these were sold in the ordinary course.

The Boat

According to Mr. Young's amended SOFA, he sold a 2005 41-foot SeaRay Sundancer in September 2007 (approximately 14 months before filing for bankruptcy) for $280,000 to a Mr. Doe.[1]  Mr. Young did not list this boat as an asset on his initial schedules or any amended schedules, confirming that he disposed of this recently-held asset prior to bankruptcy.

When asked at an April 27, 2010 deposition to explain disposition of the boat, Mr. Young, testified that he "believe[s]" he sold the boat in November 2007. Mr. Young offered no further details beyond stating that he "think[s]" the purchaser was named Mr. Doe and lived in Kentucky. As of hearing on the motion, Mr. Young has provided no records of title transfer and no further details or documentation of this sale, other than a print-out of an email containing the purchaser's name and details of the boat. Mr. Young has not accounted for the proceeds of the alleged sale.

---

[1] The court has used a fictitious name for the purchaser.

The Watch

According to Mr. Young's amended SOFA, in September 2008 (approximately 2 months before filing for bankruptcy), he sold a watch that he had purchased for his personal use. The SOFA indicates that the name and address of the purchaser is unknown. Again, Mr. Young did not list this watch as an asset on his initial schedules or any amended schedules, confirming that he disposed of this recently-held asset prior to bankruptcy.

When asked about the watch at the April 2010 deposition, Mr. Young testified that he purchased the watch for approximately $8,000 in June 2008 and that he "believe[s]" he sold the watch in August 2008 to someone responding to an internet advertisement. Mr. Young has offered no further details of the disposition of the watch and has provided no documentation or record of the alleged sale or its proceeds.

The Bedroom Furniture Set

At his deposition, Mr. Young testified that he purchased a bedroom set at Raymour & Flanigan for $12,989.75 in August 2008 (approximately 3 months before filing for bankruptcy). He further testified that he sold the bedroom set in October 2008 (approximately 1 month before filing). Again, the pre-bankruptcy disposition of this recently-held asset is confirmed by its absence on Mr. Young's initial and amended schedules. Notably, Mr. Young did not list this transaction on his original or amended SOFA.

When asked to account for the bedroom set at his deposition, Mr. Young testified

that he sold it to an unknown purchaser at a garage sale and that he has no records of this sale. Mr. Young has offered no further details of the disposition of the bedroom set and has provided no documentation or record of the alleged sale or its proceeds.

The Guitar

According to his amended SOFA, Mr. Young purchased, for $8,900, a collectible guitar which he later sold for $2,000 within two years prior to filing the instant petition. The amended SOFA indicates that the name and address of the purchaser is unknown, and it provides no specifics as to the dates of these transactions. However, at his deposition, he testified that he purchased the guitar for $8,585 on or about June 30, 2008 (approximately 5 months before filing bankruptcy) in Las Vegas, Nevada and returned it for a refund when he learned it was a "fake." Mr. Young testified that he received the refund in September 2009 (approximately 10 months *after* filing bankruptcy).

At oral argument, Mr. Young's counsel explained the set of events giving rise to this apparent inconsistency between the sale reported on Mr. Young's SOFA and the refund discussed at his deposition. According to this account, Mr. Young bought the guitar in Las Vegas as a collectible item signed by the Rolling Stones. He then resold it to an unnamed individual, in a transaction for which he has neither documentation nor further details. Later, when the purchaser asserted that the guitar was a fake, Mr. Young refunded the purchase price, *post-petition*, in another transaction for which he has neither documentation nor further details. At that point, having regained possession of the guitar, Mr. Young returned it to the original vendor for a refund, in yet another undocumented post-petition transaction.

As with the other assets at issue, the guitar does not appear on Mr. Young's initial or amended schedules, confirming that he disposed of it prior to filing bankruptcy.

IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the

party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp.*, 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine issue" for trial or to request additional time for discovery under Rule 56(f). FED. R. CIV. P. 56(e).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. FED. R. CIV. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972). If the non-moving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. *Id*. at 249.

V.     DISCUSSION

a. Failure to Satisfactorily Explain Loss of Assets

   i. Legal Standard

The debtor may be denied a discharge if he has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.  11 U.S.C. § 727(a)(5).

This discharge exception contains no requirement of fraud or intent.  *Riehm v. Park (In re Park)*, 272 B.R. 323, 332 (Bankr. D.N.J. 2001).

Despite the general rule regarding the objecting party's burden to prove an exception to discharge, *see* FED. R. BANKR. P. 4005, U.S. Trustee's burden under § 727(a)(3) is only to identify the lost or unaccounted assets; thereafter the burden is on the debtor to provide a satisfactory explanation of the loss or deficiency.  *Rios v. Shafer (In re Shafer)*, 2010 Bankr. LEXIS 1028 (Bankr. D.N.J. Mar. 31, 2010); *see also Meridian Bank v. Alten (In re Alten)*, 958 F.2d 1226, 1233 n.6 (3d Cir. 1992) (explaining the burden-shifting procedure under § 727(a)(3) by reference to the procedure under § 727(a)(5)).  Here, U.S. Trustee has successfully shifted the burden to Mr. Young, who has failed to satisfy his resulting burden.

Both parties cite to *In re Sadler*, 282 B.R. 254 (Bankr. M.D.Fla. 2002) to provide the requirements of a § 727(a)(5) objection.  The party objecting to discharge must establish that the debtor at one time owned a substantial identifiable asset, not too remote in time from the date of the commencement of the case, and that on the date of the filing of the voluntary petition the

debtor no longer had the particular asset and, when called upon to explain its disposition, was unable to furnish a satisfactory explanation. *Id*. at 266.

Thus, the objecting party must do more than nakedly allege loss of assets; instead he must identify particular assets that are unaccounted for. *Riehm v. Park (In re Park)*, 272 B.R. 323, 332 (Bankr. D.N.J. 2001).

If the plaintiff makes this initial showing, the court must determine if the debtor's explanation is satisfactory. What constitutes a "satisfactory" explanation is a matter of discretion for the court. *Subramanian v. Frost (In re Subramanian)*, 2006 U.S. Dist. LEXIS 39286 (D.N.J. June 14, 2006) (citing *In re Buzzelli*, 246 B.R. 75, 117 (Bankr. W.D. Pa. 2000)). A defendant's explanation must "convince the judge" that the explanation is worthy of belief. *Id.* (citing *In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984)).

"Although the explanation need not be far-reaching and comprehensive, it must consist of more than a 'vague, indefinite, and uncorroborated hodgepodge of financial transactions.'" *First American Title Ins. Co. v. Coven (In re Coven)*, 2007 U.S. Dist. LEXIS 28181 (D.N.J. Apr. 17, 2007); *see also Carter Eng'g Co. v. Carter (In re Carter)*, 236 B.R. 173, 180 (Bankr. E.D. Pa. 1999) ("Explanations of losses that are generalized, vague, indefinite and *uncorroborated by documentation* are unsatisfactory.") (emphasis added).

Courts ultimately must focus on the truth, detail, and completeness of the debtor's explanation. *In re Coven*, 2007 U.S. Dist. LEXIS 28181. The disposition of assets need not have been proper under the Bankruptcy Code, but rather must satisfactorily describe what happened to the assets. *Id.*

ii. <u>Application</u>

As outlined above, U.S. Trustee has identified specific assets – a watch, a guitar, a bedroom set, and a boat – that Mr. Young recently possessed and which are not accounted for. Thus, U.S. Trustee has met her burden, shifting the burden to Mr. Young to provide a satisfactory explanation for the loss of these assets.

Mr. Young has offered no such explanation. He alleges having sold these assets, but he cannot account for the proceeds from those sales, nor can he provide any details of those sales, documentary or testimonial. With the exception of the boat, Mr. Young cannot even provide the name of any purchaser of these assets. Even as to the boat, Mr. Young can provide little more than a name without any other identifying details.

This Court does not find Mr. Young's explanations to be satisfactory. Rather, they are the sort of vague, indefinite, uncorroborated, and unsupported explanations disparaged by the courts in *In re Coven* and *In re Carter*, *supra*.

To the extent that Mr. Young asserts that additional evidence is available to account for these assets, he has missed his opportunity. Discovery has closed, and the time to submit such evidence was on this motion. As noted earlier, Mr. Young submitted no additional evidence with his brief, so the only evidence available to the Court are the deposition transcripts and interrogatory answers offered by U.S. Trustee. U.S. Trustee's motion and associated exhibits identify particular lost assets, shifting the burden of production and persuasion to Mr. Young to provide an explanation under § 727(a)(5). To survive summary judgment, Mr. Young must present some evidence under which a reasonable fact-finder could find in his favor on this issue;

having failed to do so at this juncture, he is not entitled to a trial.

Again, this section contains no intent element to create issues of fact. Mr. Young argues that he is not a crook, and that the evidence could support a finding that he had no fraudulent intent. However, fraud is not an element of this discharge objection. Even a well-intentioned debtor may be denied discharge under § 723(a)(5).

U.S. Trustee has identified particular lost assets, and Mr. Young has not provided any satisfactory explanation as to the disposition of these assets. For these reasons, summary judgment on the § 727(a)(5) objection is appropriate.

b. Failure to Keep or Preserve Records

i. Legal Standard

The debtor may be denied a discharge if he has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3).

Under this section, the burdens of proof and the burden shifting procedures are identical to those outlined above for § 727(a)(5). *See Meridian Bank v. Alten (In re Alten)*, 958 F.2d 1226, 1233 (3d Cir. 1992); *Cadle Co. v. Prupis (In re Prupis)*, 2007 Bankr. LEXIS 323, 20-21 (Bankr. D.N.J. Jan. 24, 2007). As with the previously discussed objection, U.S. Trustee has met her burden while Mr. Young has not.

As the Third Circuit noted in *In re Alten*, 958 F.2d at 1232, "a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." In clarifying the dual-part test explained in *In re Alten*, the court in *Buzzelli* held that adequate records are those that allow for an "intelligent inquiry," excluding records that are either (a) chaotic or incomplete, (b) speculative, or (c) in such a condition that a creditor must organize and reconstruct the debtor's business affairs. *Buzzelli*, 246 B.R. at 96-97. With respect to the second prong in *In re Alten*, the court noted the following:

> As for the requirement that an objecting creditor show that a debtor's failure to maintain and preserve adequate records makes it impossible to ascertain the debtor's financial condition and material business transactions, "no court has suggested that … [said requirement] means that a debtor is relieved from the burden of providing records unless the creditor can show the impossibility of discovering each piece of necessary financial information." *In re Wazeter*, 209 B.R. 222, 229 (W.D.Mich. 1997) (interpreting the *Meridian Bank* decision) . . . . Quite obviously, the Third Circuit could not have intended, and Congress most certainly did not intend, to impose upon creditors such an insurmountable burden before they could prevail under § 727(a)(3).

*Id*. at 97.

Once a creditor meets its burden under § 727(a)(3), a debtor may only prevail if his failure to maintain and preserve adequate records was "justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). Justification is a fact-specific question of reasonableness. *In re Alten*, 958 F.2d at 1230-31.

The justification inquiry, as analyzed in *In re Alten*, appears to have two components. The first is "what a normal, reasonable person would do under similar circumstances," given

"the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *Id.*

The second component is the fullness, in the absence of records, of disclosure – the adequacy of which is a condition precedent to discharge. *Id.* "While the debtor may justify his failure to keep records in some cases, a discharge may be granted only if the debtor presents an accurate and complete account of his financial affairs." *Id.* "The test is whether there [is] available *written* evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past, may be ascertained." *Id.* (emphasis added, internal quotations and citations omitted).

Based on the above analysis of § 727(a)(3), this discharge exception is based purely on objective standards, without any intent requirement. *See Davis v. Wolfe (In re Wolfe)*, 232 B.R. 741, 745 (B.A.P. 8th Cir. 1999) ("727(a)(3) does not contain an intent element, but, rather, imposes a standard of reasonableness."). *But see* 6 COLLIER ON BANKRUPTCY ¶ 727.08 (Alan J. Resnick & Henry J. Sommer eds., 15th ed. rev.) ("[T]he element of intent . . . is necessary, for example, in subsections 727(a)(2), (3) and (4).").

ii. <u>Application</u>

Here, U.S. Trustee has made an initial showing as to numerous inadequacies in Mr. Young's records. Mr. Young has failed to document, in any way, substantial cash transactions involving resale of consumer goods purchased on credit. Mr. Young has also failed to maintain adequate records of his taxes or gambling activity, and discrepancies abound in those records

which Mr. Young has provided.  To the extent Mr. Young has provided records, those records are chaotic, incomplete, and speculative.

Mr. Young does not dispute these failures, but instead argues that the documentation he has provided to U.S. Trustee (which appears voluminous if not accurate or reliable) is sufficient to show that Mr. Young was "not acting fraudulently."  However, this argument does not address the accurate and complete disclosure requirement embodied in § 727(a)(3), which has nothing to do with fraud or intent.

Due to the lack of adequate records, U.S. Trustee is unable to make an intelligent inquiry into Mr. Young's affairs, making it impossible to ascertain his financial condition and material business transactions.  Thus, U.S. Trustee has met her burden and the burden consequently shifts to Mr. Young.

This Court finds Mr. Young's failures to be unreasonable and unjustifiable under the circumstances.  Mr. Young's liabilities, involving a mixture of personal and business obligations, are significant.  Mr. Young argues that he is unsophisticated and should not be held to a higher standard.  However, Mr. Young's sophistication is but one of several circumstances relevant to the justification inquiry.  Here, the volume and complexity of his financial dealings and liabilities obligate him to provide more documentation.

U.S. Trustee has identified failures in record-keeping, and it appears that these failures have precluded any accurate analysis of or intelligent inquiry into Mr. Young's financial affairs.  Mr. Young has not provided any satisfactory justification for these failures.  No intent element, which might create an issue of fact, is required.  For these reasons, summary judgment on the

§ 727(a)(3) objection is appropriate.

VI.    CONCLUSION

Because Mr. Young has failed to satisfactorily explain the disposition of certain assets, and because he unjustifiably failed keep adequate records of his gambling activity, business income, and cash resale transactions, he is denied a discharge under 11 U.S.C. § 727.

Dated: November 15, 2010                                             **/S/ Raymond T. Lyons**
                                                                                          United States Bankruptcy Judge